## Lewis et al. *versus* Lewis et al.

Where a testator devised two tracts of land to different persons, but the devisee of the second tract elected to take the first, and more valuable, by a paramount title, the devisee of the first tract may recover in ejectment the second tract.— Though where the land elected is of inferior value to the land rejected, *compensation* may be the rule in equity, which compensation our Orphan's Court, under the acts of 29th March, 1832, and of 16th June, 1836, may enforce by sequestration, or other process; yet where the value of the land rejected is inferior to the land taken, the land rejected is forfeited by the act of election and may be recovered in ejectment.

ERROR to the Common Pleas of *Bucks county.*

Charles Lewis and William Henry Stalcup and Elizabeth Ann, his wife in right of the said Elizabeth, formerly Elizabeth Ann Lewis, *vs.* Thomas Lewis and Thomas E. Lewis, William Lewis, Reading Lewis, Joseph E. Lewis, Sarah married to Jesse Craver, children of Thomas Lewis, and remainder men. In the Common Pleas of Bucks county, action of ejectment for 104 acres of land in Plumstead township. The jury rendered a special verdict in the case as follows, viz:

The jury find that both plaintiffs and defendants claim title under the will of John Lewis, deceased, dated 18th July, 1828, and proved 31st March, 1842. And also that by said will there were devised two farms, one *in Buckingham* township, Bucks county, and the other in Plumstead township, same county; the former to his son *Charles and son Richard* in equal parts as tenants in common subject to incumbrances, viz: Charles to pay to Jane Warner the interest of two hundred dollars, yearly, during her natural life, from the testator's death, and at her death, the principal sum of two hundred dollars to her children in equal shares, and Richard to pay Rachel Bradshaw the interest of one hundred and fifty dollars, yearly, during her life, from the testator's death, and at her death, the principal sum to be divided in equal shares among her children; and in both cases to be a lien on the land devised on the share of each therein so given to each devisee.

[Lewis et al. *v.* Lewis et al.]

And also that by said will, there was devised to Thomas Lewis a tract of land in *Plumstead* township, (the premises in dispute,) which the testator devised to his said son Thomas Lewis, during his natural life, and at his decease, that it should be equally divided among all his children, but if his wife Letitia should survive him, she must have her dowry as other widows. The jury also find that after the death of the testator and before the institution of this suit, Thomas Lewis was tenant in tail male of the Buckingham farm, *paramount to the will, and as such made his election to take the property in Buckingham township*, so as aforesaid devised by said testator to his sons Charles and Richard, and is now in possession of the same.

The jury also find that before the institution of this suit, the said Thomas Lewis, in conformity with the act of assembly, barred the estate tail in the Buckingham farm.

. The jury further find that before the institution of this suit, the aforesaid *Richard* Lewis died, leaving one daughter, Elizabeth, his only heir, married to Henry Stalcup, one of the *plaintiffs* in this suit.

The jury also find that the tract of land in Buckingham township, contains about 106 acres, and is worth sixty dollars per acre, and the tract in Plumstead 104 acres at thirty dollars per acre.

The jury also find that all the children of the said John Lewis, are provided for in the will.

The jury also find that the children of *Thomas* Lewis, are Thomas E. Lewis, William Lewis, Reading Lewis, Joseph Lewis, and Sarah Carver, (late Lewis,) married to Jesse Carver, being the defendants in this case.

The jury also find that Charles and Richard Lewis went into possession of the Buckingham farm, under the will of John Lewis, aforesaid, and that Thomas Lewis brought two actions of ejectment against the said Charles and Richard, and recovered possession of the said property, in the last action of ejectment as tenant in tail male, the said Charles and Richard taking defence in the action, and having previously urged the probate of the said testator's will.

The jury therefore present the above special verdict to the court, and say that they are ignorant in point of law on which side they ought, upon these facts, to find the issue, that if upon the whole matter the court shall be of opinion that the issue is proved for the plaintiffs, they find for the plaintiffs accordingly, in such manner and form as the court may decree, but if an opposite opinion, then they find for the defendants, in such manner and form as the court may direct.

The court set aside the special verdict, and the plaintiffs were invited to file a bill *for compensation.*

[Lewis et al. *v.* Lewis et al.]

Error assigned:

The court erred in setting aside the special verdict, and in not entering judgment for the plaintiffs.

The case was argued on the part of the plaintiffs in error, who were plaintiffs below, by *Roberts*, with whom was *Du Bois*.—They contended that it can make no difference to the parties in this case whether the doctrine of compensation or forfeiture be the rule in equity. The disappointed devisee cannot be compensated out of the tract of land devised to Thomas Lewis, that tract not being equal in value to the tract which the disappointed devisee has lost by the election. The disappointed party must then certainly be entitled in equity to the whole tract, and the process by sequestration would not be necessary, even in a court of equity. Sequestration can only be necessary where there is a surplus after making compensation to the disappointed devisee, 2 *Story's Eq. Jurisprudence* 1085. Besides this, Thomas Lewis, the donee, made his election against the will, by a recovery in ejectment, and by a formal election *in pais* before the commencement of this suit, and by these acts is concluded and estopped from contesting the plaintiff's right to recover. 9 *Barr* 456; 17 *Serg. & Rawle* 26; 2 *Rop. on Leg.* 1661–1669; 2 *Br. Ch. Rep.* 24; *ib.* 51. That the plaintiff is undoubtedly entitled to the rents, issues, and profits, till he is compensated for his loss. He has also an equitable, if not a legal title to this tract of land, and the action of ejectment, in our blended system of law and equity, affords him a remedy to recover possession of the land. 4 *Serg. & Rawle* 528, Gauss *vs.* Wiley; 8 *Serg. & Rawle* 491; 2 *Watts* 148; 1 *Watts & Serg.* 9.

*Wright*, contra.—The election of Thomas Lewis to take the estate-tail in opposition to the will of his father, did not work a *forfeiture* of the estate devised to him by the will. If the disappointed devisees and legatees are entitled to anything, it is merely to *compensation;* and the only method of effecting this, is by sequestering the estate in chancery: *Story's Eq.* sec. 1083; *Roper on Leg.* 1662–3; 1 *Swan.* 441.

"It is certainly now held that the equity in cases of election instead of being a condition, which if not performed, induces a forfeiture, is to sequester the devised interest, till satisfaction be made to the disappointed devisee." Strump *vs.* Findlay, 2 *R.* 174.

The latest authorities seem to sanction the doctrine of compensation: that when a case of election is raised, it does not give a right to retain the thing itself, though it gives a right to compensation out of the thing devised to a legatee attempting to defeat the devise to others. Chancery would sequester the thing devised to make compensation and satisfaction to the disappointed devisee." Caufman *vs.* Caufman, 17 *Serg. & Rawle* 25.

[Lewis et al. *v.* Lewis et al.]

The 13th section of the act of 16th June, 1836, gives the court of common pleas the jurisdiction and powers of a court of chancery, so far as relates to "the care of trust monies and property." The 15th section of the act of June 14th, 1836, provides that "whenever any trust shall arise by operation or implication of law, the court of common pleas of the county, in which any such trustee shall have resided at the commencement of the trust," &c., "shall exercise the jurisdiction and powers given by law in regard to such trust." And as the heir to whom a devise is given, and who elects to take an estate in opposition to the will, to the disappointment of another devisee, is held to take the estate so given to him as *trustee* for the disappointed devisee: *Story's Eq.* sec. 1083–4; it is contended by the counsel for the defendants in error, that the common pleas have equity powers sufficient to meet this case. Fretz's Appeal, 4 *Watts & Serg.* 436.

The opinion of the court was delivered April 19, by

GIBSON, C. J.—The doubt is not so much about the extent of the plaintiff's right, as about the means to enforce it. In England, the remedy is in equity; and the Judge who ruled the cause was of opinion, that the common pleas had equitable jurisdiction of the case, by the 13th section of the act of the 16th of June, 1836, which gives that court among other things, the powers of a court of equity, so far as relates to "the care of trust monies and property, and other monies and property;" and I will not say that this obscure clause might not be so construed, were it necessary to resort to it, as to shake off the imperfect remedy we were compelled to employ, as a substitute for a bill in equity. But, jurisdiction is more explicitly given to the orphan's court, which, within the limits of its jurisdiction, is strictly a court of equity, proceeding by petition and answer, and enforcing its decrees by attachment, sequestration, or execution, as the case may require.— By the 4th section of the act of the 29th of March, 1832, its jurisdiction is extended to all cases in which "executors, administrators, guardians, or *trustees*, are possessed of, or undertake the care and management of, or are in any way accountable for the real or personal estate of a decedent;" and the provision is repeated, word for word, in the 19th section of the act of 1836.— Now, all the authorities shew that equity relieves, in a case of the kind, on the ground of trust. The devise passes the legal title; but a chancellor holds the recusant devisee bound, as a trustee, to compensate the devisee he has disappointed. Being seized of the legal estate, he is, in the words of the statute last quoted, a trustee, possessed of and accountable for the real estate of a decedent; and were this purely a case for compensation, the remedy would, undoubtedly, be by sequestration. But the estate of the refractory devisee, in this instance, is found in the special verdict, to be

[Lewis et al. *v.* Lewis et al.]

worth twice as much as the estate he rejected; and it is impossible to conceive that the disappointed devisee could get more than compensation from it.    As a general principle, the weight of authority decisively inclines to the side of compensation, and not forfeiture; and the writ of sequestration is used to prevent the disappointed devisee, from being in reality, a gainer, by what was apparently his loss.    After compensation is made, pursuant to it, the surplus remains to the devisee; but why employ it, when there cannot, by any possibility, be a surplus?    Where the disappointed devisee must be a loser, in any event, it would be useless to keep the property locked up in the hands of a sequestrator, who must be paid for his services.    The profits from it would not be equal to the profits of the estate, of which the complainant had been deprived; and the property would remain sequestered forever.    I confess that I have found no precedent for such a case; but it appears to me to be one, not of compensation, but of forfeiture.—Even Lord ELDON, who maintained the principle of compensation as a general one, admitted in Tibbets *vs.* Tibbets, 19 *Vesey* 666; and Green *vs.* Green, *ib.* 668; that there are cases to which it is inapplicable.    There would often be no other remedy than a decree to convey; and such a decree might, in this instance, have been obtained in the orphan's court.    But was the plaintiff bound to obtain it, as the foundation of an action at law?    As a consequence, if the legal title would have been decreed for his peculiar benefit, he might waive it, on the foot of a familiar maxim, and maintain his ejectment, according to the established practice, in Pennsylvania, on his equitable title.    The court, therefore, had jurisdiction of the matter, in the form of the proceeding before it; and the plaintiff ought to have recovered.

Order of the Common Pleas reversed,
and judgment for the plaintiff.