## Alexander Reeser, Appt., *v.* John Reeser.

Equity will, at the instance of a trustee, restrain, by preliminary injunction, a *cestui que trust,* from issuing execution on a judgment in his own name, where there is a dispute as to whether or not the judgment is included in the trust.

(Decided May 31, 1886.)

Appeal from a decree of the Common Pleas of York County, in equity, restraining by injunction the collection of a judgment.    Affirmed.

The bill in equity, filed September 9, 1885, by the plaintiff below, the appellee, alleged that William Reeser died, having made a will, probated March 11, 1872, in which he provided, *inter alia,* as follows:    "I give and bequeath unto my son Alex-

NOTE.—So, an injunction may issue to restrain an execution on a judgment, when the remedy at law is inadequate; thus, to restrain where property of a lunatic is levied upon in the hands of his committee (Eckstein's. Estate, 1 Clark [Pa.] 224, 1 Pars. Sel. Eq. Cas. 59); or where the judgment has been equitably assigned to the complainant (Jamison v. Dech, 1 Northampton Co. Rep. 98); or where the judgment is usurious, until the excess is remitted (Duquesne Bank's Appeal, 74 Pa. 426).

ander, during his lifetime, a tract of land (describing it) subject to the payment of $300 to my estate; and, further, I appoint my son, Abraham Reeser, trustee over the estate of my son Alexander."

The residue of the estate, after payment of legacies, etc., was directed to be shared among his children "share and share alike." Abraham Reeser died without having acted in the trust, and the plaintiff was appointed trustee in his place by the orphans' court, October 8, 1872.

The bill further alleged that Alexander Reeser was a "man of weak mind and of unstable purposes, and easily led by others." He lived with different brothers for a time, and with a nephew, and with Jacob Mohr, a brother-in-law, who was one of the executors of William Reeser's will. Jacob Mohr, by the plaintiff's consent and in subordination to his wishes and under his direction, assisted in the management of Alexander's estate, taking notes for money loaned, and crediting interest payments thereon. The notes were written in the name of Alexander, but, with one or two exceptions, they were retained in the custody of Jacob Mohr.

In the spring of 1883 Alexander loaned $500 to John A. Bahn, upon his judgment exemption note with S. L. Bahn as security, and received one year's interest. On April 22, 1884, judgment was entered on this note in the name of Alexander, and interest paid to the plaintiff in the spring of 1885. Since 1884 Alexander has lived in Adams county with the plaintiff's son, who is married to the daughter of one Blauser. The plaintiff alleged that he was informed that his son and the said Blauser had acquired complete control over Alexander, and that they had procured him to execute a power of attorney to Blauser to collect his moneys and manage his affairs; and that they had procured Alexander to execute to plaintiff's son a promissory note for $900, without any or sufficient consideration, and to execute a paper appointing Blauser trustee. The plaintiff further alleged, on information and belief, that Alexander, or those who thus represent him, was about to issue execution on the judgment against Bahn; that the money loaned to Bahn was trust money, under the will of William Reeser; and praying for an injunction to restrain the execution.

The affidavit of Alexander Reeser, the defendant, alleged that the trust created by the will related only to the management of the real estate, and was so understood and acted upon by John Reeser, the appellee; that the said John Reeser, on March 26, 1881, nearly nine years after his appointment, filed his first account as trustee, in which is embraced not an item of the personal property now claimed as covered by the trust, but only income or proceeds of crops annually raised on the real estate; that the other moneys and property bequeathed to the said Alexander were absolute bequests and not upon any trust; and the same, amounting to $1,323.75, were paid over to him by the plaintiff and Jacob Mohr, the executors of the will, who took a release for the same, duly acknowledged and recorded.

The affidavit further alleged that the deponent was owner of about $2,000 received from his father in his lifetime and about $1,000 of his own earnings; that these sums with their accretions amounted to about $6,000; and by reason of the commingling of these sums it was impossible to ascertain from which source the $500 loan to Bahn came.

The defendant denied that he was of weak mind, or that Blauser or others had complete control over him, or that Mohr had acted as his agent in subordination to the plaintiff; and alleged that, if interest had been paid by Bahn to the plaintiff, it was without the defendant's knowledge or consent and he would hold the maker for it. The defendant further alleged that he had left his brothers because they did not treat him kindly, and that they only wanted his money.

Affidavits were filed by both parties in support of their allegations.

On June 8, 1885, John Reeser filed a second account in the register's office of York county, as trustee under the will of William Reeser, deceased, in which he charged himself with "note vs. Bahn, in hands of Alexander," $500, together with other notes, etc., to which exceptions were filed, which are still pending.

The court, GIBSON, J., granted a preliminary injunction, delivering the following opinion:

"As this is a case between a trustee and the *cestui que trust,*

and involves the question of an active trust, as regards the personal estate bequeathed to Alexander Reeser, under the will of William Reeser, deceased, as well as the extent to which the trust declared in the will is simple or special, it is peculiarly within the province of a court of equity; and as the application of the plaintiff for a special injunction is for the temporary restraint of the defendant from the collection of moneys alleged to belong to the trust, I think it is proper that the injunction should be granted until the final hearing.

"And now, October 10, 1885, this cause came on to be heard on a motion for a special injunction, and was argued by counsel on affidavits; whereupon, on consideration, it is ordered and decreed that, security being given in the sum of $1,000, the defendant, his agents, or attorneys be restrained from the collection of said judgment by execution or otherwise, until the further order of the court."

The appellant took this writ, assigning for error the action of the court in granting the injunction.

*J. C. Neely, H. L. Fisher,* and *George G. Fisher,* for appellant.—The legal title to the judgment is in the appellant. It did not become so by any trick, fraud, or mistake. Equity was never intended to be used to obstruct the collection of debts. Winch's Appeal, 61 Pa. 426; Hunter's Appeal, 40 Pa. 194; Gilder v. Merwin, 6 Whart. 541; Riley v. Ellmaker, 6 Whart. 545.

The right of pursuing a trust fund fails when the means of ascertainment fail. Thompson's Appeal, 22 Pa. 16.

A clear legal or equitable right must be shown, to authorize a preliminary injunction. Scott v. Burton, 2 Ashm. (Pa.) 312; Auburn & C. Pl. Road Co. v. Douglass, 12 Barb. 555; Smith v. Lard, 28 Ga. 585; Com. v. Bank of Pennsylvania, 3 Watts & S. 193.

Where the answer denies all the equity, if any, in the bill, no injunction will issue. Crandall v. Woods, 6 Cal. 449; Hilliard, Inj. chap. 1, §§ 16, 18, 19.

This plaintiff has been guilty of most unreasonable laches, by

which he has forfeited his right to relief if ever he had any. Grey v. Ohio & P. R. Co. 1 Grant, Cas. 412; Dohnert's Appeal, 64 Pa. 315.

The delay which precludes the relief may apply to the right sought to be enforced, as well as to the remedy. Hilliard, Inj. chap. 1, § 43; chap. 4, § 22.

An injunction at the instance of a trustee against his *cestui que trust* is anomalous. If it is sustained, how can the judgment be collected? If it were trust money, he would have a full and ample remedy at law. Act April 7, 1859 (Brightly's Purdon's Digest, p. 1423, pl. 54); Act April 22, 1846 (Brightly's Purdon's Digest, 1452, pl. 53).

The appellee might have a bill in the nature of an interpleader. Act June 16, 1836, Div. 4 (Brightly's Purdon's Digest, 401); Dohnert's Appeal, 64 Pa. 314.

Or, if he is entitled to be substituted as legal plaintiff in the judgment, he can reach that end by motion in the court below. Druckenmiller v. Young, 27 Pa. 97.

*W. C. Chapman,* for appellee.—Trusts are peculiarly within the province of a court of equity; and threatened loss of trust funds will be restrained by injunction. Lyon's Appeal, 61 Pa. 15; Com. v. Bank of Pennsylvania, 3 Watts & S. 184.

That the legal title is in the appellant makes no difference. Stockdale v. Ullery, 37 Pa. 486, 78 Am. Dec. 440.

The common pleas, as well as the orphans' court, has jurisdiction here. Souder's Appeal, 57 Pa. 498; Campbell's Appeal, 80 Pa. 298.

A preliminary injunction will be awarded in the discretion of the chancellor, to preserve the *statum quem* until final hearing.

When the question of right depends upon the true construction of an agreement, an injunction will lie to maintain the *statum quem.* Atlantic & O. Teleg. Co. v. Philadelphia, G. & N. R. Co. 8 Phila. 246.

When two conflicting parties claim to hold the same office, an injunction will be granted to maintain the *statum quem* until final hearing. Miller v. Corcoran, 3 Law Times N. S. 179.

It is true, as was said in Rhea v. Forsyth, 37 Pa. 508, 78

Am. Dec. 441, a court of equity will not ordinarily interfere to prevent the disturbance of an alleged easement when the right of the complainant is doubtful, or seriously disputed, until he has established his claim by an action at law. But even in such case the court may retain the bill until the plaintiff has had time to settle such right in a court of common law; and if, in the meantime, it appears to be necessary, the defendant may be enjoined from meddling with the easement; in other words, the chancellor may keep things *in statu quo* until he is in a position to make a final decree. Per Mr. Justice GORDON, Bitting's Appeal, 105 Pa. 517.

PER CURIAM:

This preliminary injunction is continued, the decree affirmed, and appeal dismissed, at the costs of the appellant.