## Cooley *v.* Houston, Appellant.

*Equity—Partition—Jurisdiction—Title—Question of law.*

1. In an equitable proceeding in partition, in which the facts appear by bill and answer, and there is no adverse possession or adverse legal title shown and no issue of fact raised, the issue turning on a single question of law, equity has jurisdiction to determine the question and make partition, without compelling the plaintiff to establish his title in an action at law.

2. To justify the suspension of proceedings in partition by tenants in common on the ground that defendant holds adversely, the answer must set up more than a mere denial of the tenancy.

*Decedents' estates—Partition—Wills—Donee claiming adversely—Election—Ignorance of material fact.*

3. Where a testator, possessed of an undivided half only of certain land, attempts to dispose of all the land as if he owned it in fee, devisees of a portion of the land under the will who are also entitled under the intestate laws to share in the undivided half of the land not owned by the testator cannot claim both as devisees of the testator and as

heirs at law of the testator's deceased co-owner and are put to their election between the two positions, but their acceptance of the devises under the will subsequent to the testator's death will not bind them as by an election where such acceptance was made in total ignorance of a material fact a knowledge of which was necessary to enable them to make an intelligent choice. In such case, if the devisees later come into possession of the full facts and desire to take under the intestate laws their shares in the undivided half of the land not owned by the testator they are again put to an election between their two inconsistent claims and their action in filing a bill asking for partition in accordance with their interests under the intestate laws as heirs-at-law of the testator's deceased co-owner will be held an election to reject the benefits conferred by the will; but, in so electing to take under the intestate laws they must compensate another devisee who by reason of their election has been disappointed in not receiving the benefits given him by the testator's will.

*Decedents' estates—Wills—Donee claiming adversely—Election—Disappointed donee—Compensation.*

4. Where a donee under a will elects to claim property adversely to the will equity treats the gift to such recusant donee as a fund or source of fund for the compensation of donees disappointed by such election.

Argued Oct. 10, 1910. Appeal, No. 190, Oct. T., 1910, by William D. Houston, a defendant, from decree awarding partition of C. P. Lawrence Co., March T., 1908, No. 4, in case of Polly Permelia Cooley et al. v. William D. Houston, John Clark, George Clark and Elsie Trask. Before Fell, C. J., Mestrezat, Elkin, Stewart and Moschzisker, JJ. Reversed.

Bill in equity for partition of real estate. Before Porter, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* was decree of the court.

*S. W. Dana,* with him *Richard F. Dana,* for appellant.— The plaintiffs are so clearly out of possession that partition cannot be had: Longwell v. Bentley, 23 Pa. 99; Galbreath v. Galbreath, 5 Watts, 146; Law v. Patterson, 1

W. & S. 184; McMahan v. McMahan, 13 Pa. 376; Martin v. Martin, 17 S. & R. 431; McMaster v. Carothers, 1 Pa. 324; Mercur v. Jackson, 3 Pa. C. C. Rep. 387.

The doctrine of compensation may be considered as fully established: Gretton v. Haward, 1 Swanst. 433, note; Hamilton v. Buckwalter, 2 Yeates, 389; Cauffman v. Cauffman, 17 S. & R. 16; Stump v. Findlay, 2 Rawle, 168; Preston v. Jones, 9 Pa. 456; Plummer v. Neile, 6 W. & S. 91; Fulton v. Moore, 25 Pa. 468; Armstrong v. Walker, 150 Pa. 585; Tomkins v. Merriam, 155 Pa. 440; Cummings's App., 153 Pa. 397.

*C. H. Akens,* of *Akens, Wilkison, Lockhart* and *Chambers,* with him *J. Norman Martin,* for appellees.—In partition proceedings a mere assertion of title by a claimant unsupported by conveyance of proof of any kind does not show such a case of disputed title as deprives the court of jurisdiction: McCorkle's Est., 184 Pa. 626; Appeal of Wistar, 115 Pa. 241; Muenich's Est., 52 P. L. J. 191; Galbraith v. Bowen, 5 Pa. Dist. Rep. 352; McMahon's Est., 211 Pa. 292; Sanders's Est., 41 Pa. Superior Ct. 77.

Nothing else than unequivocal acts will prove an election and they must be done with knowledge of the facts: Woodburn's Est., 138 Pa. 606; Cox v. Rogers, 77 Pa. 160; Miller's Est., 159 Pa. 562; Kreiser's App., 69 Pa. 194; Dickinson v. Dickinson, 61 Pa. 401; White's Est., 23 Pa. Superior Ct. 552.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1911:

This was a bill filed for partition of 162 acres of land in Lawrence county. The case was heard on the bill and answer, no replication was filed and no testimony was taken. The facts, therefore, appear by the pleadings.

Hamilton Houston owned a farm of 162 acres in Lawrence county. The title passed from him, apparently by deed, to his two sons, James and William, on or about May 30, 1876. On that date the sons gave him a mortgage in the penal sum of $10,000 conditioned for the pay-

ment of certain moneys for the support of their father and mother. The deed has disappeared but the mortgage is of record. It is averred and not denied that on February 14, 1879, James and William were tenants in common in fee of the farm. James died on that day, intestate, leaving a widow, Eliza J., but no issue. In March, 1879, William conveyed an undivided one-half interest in the farm to Hamilton Houston, and about the same date Eliza J. Houston, the widow of James, delivered a deed to Hamilton purporting to convey to him the other undivided one-half interest in the farm. Hamilton continued in possession of the whole farm and paid the taxes thereon until his death in 1892. William lived with him. The parties apparently assumed that the deeds of 1879 had vested the entire title in Hamilton.

Hamilton Houston died, testate, in 1892 leaving to survive him a widow, who died in 1906, one son, William D., and six daughters, one of whom, Mrs. Clark, died in February, 1907. By his will, made in 1880 and probated in September, 1892, Hamilton gave to his widow the use of a room in the farmhouse and also "whatever is necessary to her comfortable support and maintenance in the manner of life to which she has been accustomed." He then devised to William "sixty-two acres of the east end of the farm on which I now reside," describing it by metes and bounds, and to his six daughters "the remainder of my farm . . . . aforesaid" describing it as adjoining the part devised to William, "and containing one hundred acres more or less."

The house was on the sixty-two acre tract, and William took and has retained possession of the tract, subject to his mother's rights, and has made valuable improvements. The daughters took and have retained possession of the 100 acre tract and have received the rents and profits. Neither William nor the daughters ever asserted any claim to the part of the land devised to the other, until shortly before the filing of the present bill.

This bill was filed early in 1908 by the five daughters

and a son of the deceased daughter against William and three of the children of the deceased daughter for partition of the whole farm of 162 acres. It avers the facts stated above, and that on the death of James his undivided one-half descended under the intestate laws to his brother, William, and his sisters, subject to the right of the widow to the one-half part of James's interest for her life, and subject to the right of his father and mother in James's share for and during their joint lives and the life of the survivor of them. It is also averred that the interest of one of the sisters in the 100 acre tract was conveyed to the other five sisters in 1893. The plaintiffs claim their shares under the intestate laws in the sixty-two acres, devised to William by his father, as well as in the 100 acres devised to them, conceding that William is entitled, in the same way, to one-seventh of the one-half of each tract. They also claim that they have become the owners of their respective interests in the premises by descent, by will and by deed. In his answer, William avers that by taking under the will, the daughters made an election and cannot now claim any interest in the sixty-two acres. He disclaims any interest in the 100 acres. The plaintiffs amended their bill and averred that until after their mother's death in 1906, they had no knowledge that James ever had any title to the land in his lifetime, but allege that William had such knowledge. William replies to the amended bill that the conveyance to him and James by their father was a family arrangement, not concealed, and there is no reason why it was not known to all the members of the family; that James's interest, at his death, was incumbered by the mortgage, and was of little if any value; and that he, from the time of James's death (and the reconveyances) always supposed his father owned the entire farm.

William Houston, one of the defendants, contends (1) that he held the sixty-two acres adversely to the plaintiffs and hence they are not entitled to have partition; (2) that they are now estopped from making their present

claim by their election; and (3) that they cannot take both under and against the will.

The learned court below held that no adverse title in William was shown, such as ousted the jurisdiction in partition; that the alleged election did not contain the necessary elements to constitute an estoppel; and that the improvements made on the land, the payment of taxes and the receipts of the rents and profits could all be ascertained and adjusted in this proceeding. The court further held that the daughters could retain their shares in James's estate under the intestate laws, and also take under the will to the extent that the testator had an estate to give them. A decree was accordingly entered as prayed for in the bill, and a master was appointed to make partition. William D. Houston, the defendant, has appealed from this decree.

We agree with the learned court below that the answer sets up nothing which would oust its jurisdiction to make partition of the farm. The facts appear by the bill and answer, and there was no adverse possession nor adverse legal title shown. There is no issue of fact raised. The bill avers the title at the death of Hamilton Houston as set out above. He had the title in fee simple to only the undivided half of the farm. By virtue of the deed from Eliza J., the widow of James, he also had her interest which was a life estate in the one-half of James's undivided half, and he and his wife had a life interest in the other one-half of James's undivided half interest. After the life interests, William and the daughters took James's undivided half interest in remainder. The daughters aver this legal title in them and with their interests under the will make it the subject of the bill for partition. In his answer, William does not deny that at the death of his father the title was different from that alleged in the bill, nor does he assert any facts tending to show an adverse legal title in himself. The material averments of his answer are as follows: "Immediately upon the death of the said Hamilton Houston I entered upon the full

possession of the sixty-two acres of land devised to me under and by virtue of the said will and have held and enjoyed the exclusive possession and ownership thereof paying the taxes thereon the same being assessed in my name to the present time, subject to the interest therein of my mother under said will. . . . And I have never made any claim whatever to any interest in the land so accepted by them (the sisters), nor have my said sisters made or set up any claim to the land devised to me as aforesaid until a short time previous to the filing of the bill in this case. . . . I also claim to be the owner in severalty and in fee of the sixty-two acres so as aforesaid devised to me in and by the said will and that my sisters have no interest whatever in the same." The last clause of the answer is predicated on the equitable doctrine of election which is invoked by William in the immediately succeeding paragraph of his answer.

There is no dispute as to the undivided half which William owned and conveyed to his father. The latter unquestionably had a right to devise that interest in the farm. The dispute arises over the other undivided half, owned by James at the time of his death. It will be observed that the answer does not deny that James died intestate owning the undivided one-half of the farm, and that his interest was not conveyed to his father. Then, as disclosed by the pleadings, if there was nothing else to prevent, the plaintiffs and the defendants would take James's undivided half under the intestate laws and the court had jurisdiction to make the partition. The only ground for the contention that William holds the sixty-two acres adversely to the plaintiffs is that, having accepted the 100 acres devised to them by their father and retained it until the present time, the plaintiffs are bound by this action, and the equitable doctrine of election prevents them from now asserting their right to James's interest. There is, therefore, no question of fact raised by the pleadings to be adjudicated. It is simply a question of law under the facts admitted by the pleadings

whether the defendant is and has been holding the sixty-two acres adversely to the plaintiffs so as to compel them to establish their title in an action at law before demanding their right to partition in a court of equity. Under these circumstances, equity has jurisdiction to determine the question and to make partition: Wistar's App., 115 Pa. 241; Welch's App., 126 Pa. 297; McCorkle's Est., 184 Pa. 626; Bishop's Est., 200 Pa. 598; McMahon's Est., 211 Pa. 292; Carey v. Schaller, 16 Pa. Superior Ct. 350; Church's App., 17 W. N. C. 541, 7 Atl. Repr. 751. If the facts set up in the pleadings disclosed a dispute as to the title, the plaintiffs would be compelled, before they could demand partition, to establish their title in an action at law. The titles of the parties to land cannot be determined in a proceeding in partition. But to justify the suspension of the proceedings in partition on the ground that the defendant holds the land adversely to the plaintiffs, he must set up in his answer more than a mere denial of the tenancy in common. He must aver facts which if established in a common-law action will show that he is holding adversely to the claim of the plaintiffs. It would be idle to suspend partition proceedings and compel the plaintiff to go into a common-law court and establish his title, when it appears from an inspection of the pleadings there is no adverse title, and the court on the trial would be compelled to direct a verdict for the plaintiff. In the present case, William does not hold adversely unless under the facts as disclosed by the pleadings he can invoke the equitable doctrine of election and thereby estop the plaintiffs from now asserting their rights in James's undivided one-half of the real estate. A court of equity can determine this question which is one of law and not of fact as well as a court of law, and thereby save the delay and cost incident to an ejectment suit. We think the court below had power to entertain the bill.

There is no doubt that the plaintiffs on the death of their father were put to their election whether they would

take under the will or would assert their rights as heirs at law of their brother James and take their share in his undivided one-half of the premises under the intestate laws. It was clearly a case for election by both parties. Neither the daughters nor the son could take under and against the will. If either accepted the donation under the will, he was required to renounce his right to an interest under the intestate laws in James's share of the realty. If he elected to take his share under the intestate laws, he was compelled to make good the testator's attempted disposition by compensating the disappointed legatee or devisee. In 1 Pomeroy's Eq. Jur. (2d ed.), sec. 395, the learned author says: "This doctrine (of election) involves a notion that no man can claim inconsistent rights with regard to the same subject, and that any one who asserts an interest under an instrument is bound to give full effect to that instrument; he cannot both accept and reject it, or avail himself of its benefits as to a part, and defeat its provisions as to other parts. . . . The donee is entitled not to both, but to the choice of either." It is also equally clear that the testator attempted to dispose of the whole farm of 162 acres as if he owned it in fee, and not simply his undivided interest therein. He devised to William "sixty-two acres of the east end of the farm on which I now reside" and then described it. He devised to his six daughters "the remainder of my farm . . . . adjoining and lying northwest from the part heretofore devised to my son . . . . containing one hundred acres." While the testator is presumed to have intended to bequeath or devise only his interest in the property, and the presumption is not rebutted by general words of description and donation, yet if he devises or bequeathes the property by words of description and donation importing an intent to give the entirety, a co-owner who receives a benefit under the will is put to his election: 1 Pomeroy's Eq. Jur., sec. 489; Little's App., 3 Walker, 225. The testator in the present case in making the devises used words importing ownership of the entire

farm and devised specific portions of it. His language clearly indicates his intention to give a fee-simple title to the respective devisees. They were, therefore, put to their choice between the two inconsistent or alternative claims.

We do not agree with the contention of the defendant, Houston, that the plaintiffs are estopped from asserting their claim by reason of their conduct in accepting the devises and bequests made to them in the will. It is averred in the amended bill that prior to January, 1906, the plaintiffs had no knowledge of the fact that their brother James Houston died seized of the undivided one-half interest in the lands in question, and that in all their acts and transactions subsequent to the death of their brother and father they understood and believed that the full title to the lands was vested in their father at the time of his death. This is not denied in the answer. If, therefore, it be conceded that the acts of the plaintiffs subsequent to their father's death in accepting the devise of the 100 acres amounted to an election, it is clear that it was done in total ignorance of a material fact, a knowledge of which was necessary to enable them to make an intelligent choice. In such case it is settled that the party making the election is not bound by his act: Miller's Est., 159 Pa. 562; Woodburn's Est., 138 Pa. 606; Cox v. Rogers, 77 Pa. 160; Dickinson v. Dickinson, 61 Pa. 401; Kreiser's App., 69 Pa. 194. It was upon this ground that the learned court below held that they were not estopped from now asserting their rights to their brother James's interest in the land, and that they could maintain this bill for partition. In its final opinion, the court says: "With this proposition (that the plaintiffs were bound by their election and estopped from making a claim contrary to the will) we could agree if the daughters had known their rights in the premises at the time they entered into possession of the one hundred acres; but at that time they did not know that their brother James had died seized of an undivided one-half of the one hundred and sixty-two acres."

The learned court concedes that the plaintiffs were put to their election after the death of their father whether they would accept the devise given them by the will or claim their interest as heirs in their brother James's undivided one-half of the farm. Having successfully invoked the aid of the court in avoiding the effect of their acceptance of the devise under the will, they are restored to the position they occupied in 1892, immediately after their father's death and before they accepted the provisions of the will. Does it not necessarily follow that they are now required to make their election between the two inconsistent claims the same as they did immediately after their father's death? In other words, can they secure the benefit accruing to them by having their acceptance of the will avoided without incurring the consequences, one of which is that they must now make their choice between taking the undivided one-half of the premises under the intestate laws and the donation of the will? As pointed out above, this is a case requiring an election, and the plaintiffs must make their choice before they can demand any part of the farm. They were not concluded by their former election because it was done in ignorance of the facts; now they are fully advised as to the facts and they are, therefore, put to their election. When they were advised of the facts, and of their rights arising therefrom, they could have done one of two things: abide by their acceptance or have it nullified on the ground of their former ignorance of the facts. They chose the latter course, and were thus placed in statu quo with a like duty to make an election and were compelled to do so. It is similar to the case of a widow who makes an election between the donations of her husband's will and her rights under the intestate law. She may avoid the choice made in ignorance of the facts but when she does so she is compelled again to make her election. "There are undoubtedly decisions," says STRONG, J., in Bradfords v. Kents, 43 Pa. 474, 485, "that a widow may elect dower even after she has claimed and received

the legacy or devise made to her, but she may not receive and hold the benefits conferred by the will of her husband, after the extent of her rights has become known to her, and then retract her election."

Having been relieved from the effect of their acceptance of the provisions of the will, and it now being their duty to make their election, we must treat the action of the plaintiffs in demanding partition of the farm in accordance with their interests in James's undivided one-half thereof under the intestate laws as an election to reject the benefits conferred by the will. They had full knowledge of all the facts at the time they filed this bill, and in thus asserting their right to James's interest in the real estate they must be regarded as electing to take such interest in the property instead of the devise and legacy given them by the will. They cannot, however, take James's interest under the intestate laws without compensating their brother William for his disappointment in not receiving the benefits given him by his father's will. To the extent that he is injured by their election to take against the will he is entitled to compensation out of that portion of the estate which was devised or bequeathed to the plaintiffs. They cannot hold the share of their father's estate devised or bequeathed to them and at the same time defeat the devise given to William. Equity will compel them to make compensation to William for his disappointment. Of the two inconsistent rights, they may take but one, they cannot take both. The condition imposing the obligation of an election says that the donee shall confirm the will, or else, out of the testator's property given to him by the will, he shall make compensation to the third person, who is disappointed by his choice: 1 Pomeroy's Eq. Jur. (2d ed.), sec. 467. In Lewis v. Lewis, 13 Pa. 79, Chief Justice GIB-SON says (p. 82): "Now, all the authorities show, that equity relieves, in a case of the kind, on the ground of trust. The devise passes the legal title; but a chancellor holds the recusant devisee bound, as a trustee, to com-

pensate the devisee he has disappointed." In Armstrong
v. Walker, 150 Pa. 585, HEYDRICK, J., speaking for the
court says (p. 587): "It is a maxim of the law that who-
ever will avail himself of a testator's bounty shall not
disappoint his will. The converse proposition, that who-
ever disappoints the will of a testator shall have nothing
under it, is equally true, at least to the extent of the dis-
appointment. In such cases equity treats the gift to the
recusant object of the testator's intended bounty as a
fund or source of a fund for the compensation of disap-
pointed legatees or devisees."

We are of the opinion that the learned court was right
in holding that it had jurisdiction to make the partition
and that the acceptance by the plaintiffs of the devise
under the will, having been made in ignorance of the
facts necessary to an intelligent election, was not bind-
ing upon them and did not estop them from asserting
their rights when they became fully advised of the facts.
We think, however, that the court was in error in hold-
ing that they were entitled to take their interest in James's
undivided one-half of the estate and also an interest un-
der the will without compensating their brother William
to the extent of his disappointment. The case must,
therefore, be remanded that it may be proceeded in the
court below in accordance with the views herein expressed.

The decree is reversed with a procedendo.