Brown et al., Appellants, *v.* Brancato et al.

Argued January 28, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

56

*Joseph P. Gaffney,* for appellants.

*Lemuel B. Schofield,* for appellees.

OPINION BY MR. JUSTICE LINN, March 23, 1936:

On defendants' petition, filed pursuant to the Act of March 5, 1925, P. L. 23, 12 PS, section 672 et seq., for the purpose of trying the jurisdiction, the learned court below held that it was without jurisdiction and dismissed plaintiffs' bill. We granted a supersedeas. The bill was filed by the Directors of City Trusts[1] to restrain the defendants from carrying out their threatened purpose of proceeding, as a committee of the House of Representatives, with an investigation of the administration of the plaintiff Directors of City Trusts, inter alia, by taking possession of their books, records and accounts and otherwise impeding and interfering with them in the performance of their fiduciary duties. Defendants caused a general appearance to be entered on their behalf (*Trust Co. v. Berkin,* 299 Pa. 196, 149 A. 470; *Gray v. Camac,* 304 Pa. 74, 76, 155 A. 105) so that the jurisdiction of the subject-matter alone is now involved.

---

[1] They are appointed by the Board of Judges of the Courts of Common Pleas of Philadelphia County pursuant to section 2 of the Act of June 30, 1869, P. L. 1276, 53 PS, section 6481, as affected by the Constitution, article V, sections 6 and 21, and sections 1 and 2 of the Act of May 25, 1874, P. L. 228, 17 PS, sections 252, 253. The Act of 1869 was held to be constitutional in *Phila. v. Fox,* 64 Pa. 169 (1870).

Plaintiffs, as directors, aver that they have possession and charge of the property of many trust estates[2] held as charitable trusts for specified public purposes, aggregating in value more than $93,000,000, in the administration of which they have in their control and custody "great numbers of title papers, leases, contracts agreements, books of account, records and documents, many of which are of a private and confidential nature"; that defendants were members of the House of Representatives of the General Assembly, elected for the term of two years beginning December 1, 1934; that, pursuant to a resolution of the House of Representatives adopted May 22, 1935, supplemented by another of June 12, 1935, defendants were appointed a committee "to make an investigation of the books, records, management, and operation of the Board of City Trusts [a name also designating plaintiff directors of city trusts] to the extent that may be necessary. . . ." A copy of both resolutions is given in the margin.[3]

---

[2] A large number of these trust estates are described in the historical note, page 575 et seq., 53 PS, section 6481. All are described in some detail in the annual reports of the board, containing details of investments, income, expenditures, etc.; it is matter of common knowledge that copies of these reports are distributed to all the members of the General Assembly, of the City Council, of the Board of Judges of Philadelphia, to various city officials, and that they are also sent to the principal libraries in Philadelphia where they are doubtless accessible to any inquirer.

[3] "Whereas, the Board of City Trusts of the City of Philadelphia controls the management, investment, reinvestment, disposition, and distribution of property of great value and large amounts of money in which the general public of that city has an interest; and

"Whereas, the Board of City Trusts is not subject to any adequate legislation controlling its activities or. any supervision or audit by any public officer with regard to the keeping of its accounts, books, and records; and

"Whereas, it is desirable that legislation be enacted properly to provide for the supervision, auditing, and control of the said board; therefore be it

Plaintiffs aver that the resolution was neither submitted to nor concurred in by the Senate; that the General Assembly adjourned sine die June 21, 1935, and that the power of the committee, if it had any before, ceased with the adjournment. They set forth a written demand on them made by counsel for defendants on September 5, 1935, "for copies of the full reports rendered by the Board by its accountants and auditors, Lybrand, Ross Bros. & Montgomery, covering the year 1934 and the nine years preceding" together with "access to all the

"Resolved, That the Speaker of the House of Representatives is hereby authorized to appoint a committee of five members of the House of Representatives whose duty it shall be to make an investigation of the books, records, management, and operation of the Board of City Trusts to the extent that may be necessary to effectuate the purposes of this resolution and for the information of the House of Representatives; and

"Resolved, That the committee shall make a report to the House of Representatives of this Session as early as possible; and

"Resolved, That the said committee shall have power to issue subpœnas under the hand and seal of its chairman requesting and commanding any person or persons to appear before them and to answer such questions touching matters properly being inquired into by the committee, and to produce such books, papers, records and documents as the committee may deem necessary. Such subpœnas may be served upon any person and shall have the force and effect of subpœnas issued out of the courts of this Commonwealth. Each member of said committee shall have power to administer oaths and affirmations to witnesses appearing before the committee. Any person who shall wilfully neglect or refuse to testify before said committee or to produce any books, papers, records or documents shall be subject to the penalties provided by the laws of the Commonwealth in such cases."

The second resolution is·as follows:

"Resolved, That House Resolution No. 137, Serial No. 186, Printer's No. 866, which was adopted by the House of Representatives May 22, 1935, be so amended that Resolution No. 2 read as follows:

"Resolved, That the committee shall make a report to the next House of Representatives (of this) when assembled in regular session (as early as possible); . . ."

records, books, accounts and supporting data upon which the said reports are based."

Plaintiffs aver that they have made and now make annual reports to the council of the City of Philadelphia, to the Board of Judges of Philadelphia County, and to the General Assembly of the Commonwealth as required by the Act of June 30, 1869, P. L. 1276, 53 PS, section 6481 et seq., but that, in addition, they have adopted a resolution (attached to the bill) stating that they welcome any audit of its accounts and examination of the manner in which the trusts are administered, which the Board of Judges (the appointing power) may see fit to order. They allege that the defendant committee is without power to do what it proposes and that, on the other hand, the duty which plaintiffs owe to their trusts requires them to resist such unauthorized action as that proposed by the committee, which, they aver, "would constitute an unwarranted infringement of the rights of the plaintiffs as trustees to privacy in the conduct of their duties as such trustees, and would cause irreparable damage to said trust estates by disclosing their confidential, private and intimate affairs. It would also involve, without justification, the expenditure of large sums of money belonging to said trust estates."

In addition, plaintiffs aver that defendants propose, by subpœna duces tecum, to require production of the records, books, accounts and other documents of plaintiff directors, to the general disorganization of their trust administration. Various prayers for restraint were made. The order dismissing the bill, made by the learned court below, cannot be sustained.

1. There is no doubt of the jurisdiction in equity to entertain the bill. From the earliest days chancery has exercised jurisdiction over charitable trusts: Bispham, Equity, 9th ed., section 118. Chancery powers over trusts were exercised in this Commonwealth, "as part of our own common law" prior to the Act of June 16, 1836, P. L. 784: *Whitman v. Lex*, 17 S. & R. 88 (1827);

*Mayor, etc., of Phila. v. Elliott,* 3 Rawle 170 (1831) : *Lewis v. Lewis,* 13 Pa. 79, 82; *Henry v. Deitrich,* 84 Pa. 286, 291. Section 13 of the Act of 1836 (17 PS, section 281) vests the court of common pleas with chancery powers in such cases "as the said courts have heretofore possessed such jurisdiction and powers, under . . . the laws of this commonwealth." (See also article V, section 20, of the Constitution.) Furthermore, section 13 of the Act of 1836 (17 PS, section 282) confers equitable jurisdiction on the Philadelphia common pleas "so far as relates to," inter alia, "The prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals." The plaintiffs are engaged in performing, in the "interests of the community," fiduciary duties resulting from the acceptance by the city of fiduciary obligations imposed by the wills or deeds creating the trusts.[4] They possess both an individual and a common official interest in the preservation of the trust property. Section 4 of the Act of 1869, supra, 53 PS, section 6484, provides: "The said directors of trusts shall have power to make rules and by-laws for the proper regulation of their business, to appoint as many agents as in their judgment shall be required for the proper discharge of all the duties delegated to said directors, and determine the duties and compensation of all such agents and appointees; also in the name of the said city, and in accordance with the conditions of said charitable trusts, to make all leases, contracts and agreements whatsoever, which, in the course of the administration and management of said property, it may from time to time become necessary and proper to make and execute; and it shall be the duty of the said directors of trusts, for and in the name of the said city, to do, per-

---

[4] Section 6 of the Act of 1869, supra, 53 PS, section 6486, provides that "The said directors, in the discharge of their duties, and within the scope of their powers aforesaid, shall be considered agents or officers of said city."

form and discharge, all and singular, whatever acts and duties are or from time to time may become proper or necessary to be done by the said city in discharge of said trust, and to make an annual report thereof to the councils of the city, to the board of appointment and to the legislature of the State of Pennsylvania." Section 5 provides: "It shall be the duty of the said directors of trusts, immediately after their organization, to provide a suitable place for the safe keeping of all the title papers, books of account, records and documents whatsoever of the said city, appertaining to the property, the care and management whereof, and the trusts and duties, the discharge whereof, for the said city, it is intended to devolve upon said directors of trusts; and thereupon, on notice to the agents and employees of the city having such title papers, account books, records and documents in their charge, the same shall be delivered into the custody of the said board of trusts." In *Phila. v. Fox,* supra, the right of the plaintiffs to these documents was determined. In performing their duties, they are not to be molested by unauthorized persons. They are not required to test the alleged right of such person by forcibly resisting his unlawful efforts to seize the books and records of their administration, or, for defiance of the committee's subpœnas, by subsequently justifying their resistance in proceedings for contempt or in habeas corpus (cf. *Ex Parte Caldwell,* 61 W. Va. 49, 55 S. E. 910; *Mc-Grain v. Daugherty,* 273 U. S. 135) or by suffering themselves to be indicted (cf. *Com. v. Costello,* 21 D. R. 232). Equity has jurisdiction to restrain if the committee is without lawful authority in the premises: *Martin v. Baldy,* 249 Pa. 253, 94 A. 1091; *Germantown Trust Co. v. Powell,* 260 Pa. 181, 103 A. 596; *P. R. R. Co. v. Ewing,* 241 Pa. 581, 88 A. 774; *Reeser v. Reeser,* 8 Sadler 78, 5 A. 445.

2. Having reached the conclusion that the court has jurisdiction of the parties and of the subject-matter, we should, in ordinary circumstances, remit the record to

afford defendants opportunity to answer. But in view of the purposes of defendants, as avowed at the oral argument—a question of law only being involved—it will save public time and public money if we now say, and give our reasons for saying, that we all agree that the defendant committee had no power to do what was proposed and threatened.

The record does not call for consideration of the scope of the power of a committee of the House, acting during the session of the General Assembly, because that question is not before us. More general questions of importance might also be discussed if the scope of the appeal warranted it, such, for example, as the jurisdiction of the Orphans' Court,[5] but as they can only be decisively considered when raised and argued, we pass them until some necessity requires their consideration. At this time, we limit discussion to the simple point presented: the power of this committee after adjournment. The General Assembly adjourned sine die June 21, 1935. The threatened action complained of occurred after that date.

Legislative power is vested in the General Assembly composed of the Senate and the House of Representatives: Article II, section 1, PS, Constitution, page 176. Members of the Senate are elected for four years, members of the House for two years: Article II, section 3. The Assembly shall meet in regular session on the first Tuesday of January every second year and at other times when convened by the Governor, but no adjourned annual session shall be held: Article II, section 3. No power is vested in the House to act independently of the

---

[5] On this subject reference may be made to *Franklin's Est.*, 150 Pa. 437, 24 A. 626, and to numerous decrees made by the Orphans' Court on petitions by the City of Philadelphia acting by the Directors of the Board of City Trusts. Many of these proceedings are docketed to Number 10, July Term, 1885, though others will be found by reference to the docket indexes in the office of the Clerk of the Orphans' Court.

Senate after the Assembly adjourns sine die. The Constitution contemplates the exercise of Legislative power by concurrence of both House and Senate. The legislative action of the General Assembly, in virtue of the session which convened, as required by article II, section 3, ended with its adjournment.[6] After adjournment the power of this committee of the House, if it had any power before, was effectually ended. There is no implied power in the exercise of which the House may sit after adjournment of the Assembly and therefore no power in the House to create a committee to do what the House itself may not do. From and after the adjournment, the power of the House complained of in this suit, was done once and for all. See, generally, *Ex Parte Caldwell,* supra; *State v. Guilbert,* 75 Ohio 1, 78 N. E. 931; *Jefferson's Manual* (1876) 108; *Cushing's Law and Practice of Legislative Assemblies* (1859), section 516; *Hinds, Precedents of the House of Representatives,* volume 4, section 4545; *McGrain v. Daugherty,* supra; *People ex rel v. Hofstadter,* 258 N. Y. 425, 180 N. E. 106; *State v. Childers,* 90 Okla. 11, 215 Pac. 773; *Ex Parte Hague,* 105 N. J. Eq. 89, 147 A. 220; *Tipton v. Parker,* 71 Ark. 193, 74 S. W. 298; *Dickinson v. Johnson,* 117 Ark. 582, 176 S. W. 116; *Fergus v. Russel,* 270 Ill. 304, 110 N. E. 130.

We may also add that, as defendants' proposed action

---

[6] Article II, section 11, has nothing to do with the question raised in this case. "Each House shall have power to determine the rules of its proceedings and punish its members or other persons for contempt or disorderly behavior in its presence, to enforce obedience to its process, to protect its members against violence or offers of bribes or private solicitation, and, with the concurrence of two-thirds, to expel a member, but not a second time for the same cause, and shall have all other powers necessary for the Legislature of a free State. A member expelled for corruption shall not thereafter be eligible to either House, and punishment for contempt or disorderly behavior shall not bar an indictment for the same offense." Cf. *Sharpless v. Mayor of Phila.,* 21 Pa. 147, 165; *U. S. v. Smith,* 286 U. S. 6, 33.

was as members of the committee of the House and not as individuals desiring to assert a right in them severally, questions which would arise, if such rights were asserted, may be left until appropriately raised and argued. See *In re St. Michael's Church*, 76 N. J. Eq. 524, 74 A. 491; *Powers v. Home for Aged Women*, 179 A. 610 (R. I. 1935); *Holman v. Renaud*, 141 Mo. App. 399, 125 S. W. 843.

The order appealed from is reversed, the record is remitted with instructions to grant the injunction prayed for, costs to be paid by defendants.