## Eckstein's Petition.   Yard's Appeal.

*Cities of the first class—City councils—Committees—Power to compel attendance of witnesses—Act of June 1, 1885.*

Under the provisions of the act of June 1, 1885, article XV, section 1, each branch of councils in cities of the first class is given power to compel the attendance of witnesses, and upon the issuing of a subpœna it is the duty of the person summoned to appear in response to the summons and be sworn as a witness.

When so summoned a witness cannot refuse to appear and be sworn on the ground that he is already under indictment for alleged criminal connection with the matters which the committee propose to investigate, and that the answers to questions propounded to him might tend to prejudice him in the criminal proceedings then pending. The proper course would be for him to wait until the question is propounded to him which tends to criminate him, or which is in violation of any of his rights as a citizen, which question he can then decline to answer.

Argued March 24, 1892.   Appeal, No. 172, July T., 1891, by H. H. Yard, from decree of C. P. No. 1, Philadelphia Co., June T., 1891, No. 725, in the matter of the petition of John Eckstein, clerk of the common council of Philadelphia.   Before

PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCH-
ELL, JJ.

Petition praying for an order on H. H. Yard, requiring
him to appear and testify before a subcommittee of common
council.

The facts appear by the opinion of the court below, ALLISON,
P. J., which was as follows:

"John Eckstein, clerk of common council, by statement.
sworn to on the twenty-sixth day of June, 1891, makes report
to the court, under the fifteenth section of the Bullitt bill, that
H. H. Yard, under subpœna, appeared before a subcommittee
of the finance committee of councils, and refused to be sworn
as witness, which subcommittee were, under a reference to the
finance committee by councils, investigating the matter of the
depositing of the city money and default on the part of the
city treasurer.

" This report is made under article 15 of the act of assembly
of June 1, 1885, entitled 'An Act to provide for the better gov-
ernment of cities of the first class in this commonwealth.'

" Mr. Yard refused to be sworn, under advice of his counsel,
for the reason that he was under indictment for the matters
respecting which the committee proposed to examine him.
That the bill of rights and the decision of the Supreme Court
in the case of Galbreath v. Eichelberger, 3 Yeates 515, pro-
tected him against the demand of the subcommittee that he
should be sworn as a witness and give evidence in the matter
then under investigation by said committee.

" The question raised upon this report of the clerk is whether,
under the provisions of the fifteenth section of the Bullitt bill,
the court shall direct H. H. Yard to be sworn and testify. The
obligation to be sworn is denied by Yard, and his justification
is set forth in an answer sworn to on the twenty-seventh day
of June last, and is placed on two grounds: First, the Bullitt
bill does not authorize the proceedings; second, the fifteenth
section of the Bullitt bill is unconstitutional.

" In passing on the several grounds of objection made to
granting the order, which is sought to be obtained against
Yard, we shall content ourselves with a statement of the view
which we entertain respecting the several propositions of law

which have been submitted by Yard through his counsel, as justifying his refusal to be sworn.

"First.—The power to issue subpœnas is vested in councils alone. This question falls out of the consideration of the matters before us. Yard, by appearing before the committee under the service of subpœna, waived objection to its legality, both as to form and substance. This question could only be properly raised by a refusal to appear, followed by an application for an attachment for not obeying a lawful subpœna duly served upon him. Under this head of objection, as it stands in the brief of argument furnished on behalf of Yard, we do not agree with the proposition that the power is limited to an inquiry and investigation, looking to an impeachment of an officer of the corporation.

"The power to issue subpœnas is given in any case of 'inquiry, investigation, or impeachment.' An inquiry or an investigation touching the affairs of the corporation may be wholly disconnected with an intention or purpose to impeach. An inquiry or investigation looking to impeachment may doubtless be instituted, but such inquiry is not limited to a proposed impeachment.

"Another ground of objection is, that the power of examination is limited to each branch of councils and to a committee thereof. It was conceded on argument that such committee may be either one of the standing committees or a special committee. The question thus raised might have called for serious consideration had councils not cured any defect which may have existed in the authority and power of the subcommittee, by the resolution of May 21, 1891, which empowers the committee on finance, and the subcommittee thereof now investigating the deposits of the city treasurer, to issue subpœnas and all process necessary to compel the attendance of all witnesses, etc. By this resolution the fullest authority is given to the subcommittee, who are in fact vested with the same power as that given to the finance committee. This, in effect, makes the subcommittee a committee of councils; they derive all necessary power under this resolution directly from councils, and are to be regarded as standing in this investigation as if originally appointed by councils as a special committee; ratification and express recognition, accompanied by a

specific grant of authority, is equivalent to an original appointment with power to act.

" Touching the objection that the offences to be inquired of must be offences against the Bullitt bill, as an abstract proposition, may be admitted to be well taken. But we do not agree with the contention that inquiry and investigation is restricted to the specific acts mentioned in the answer. If the care and proper use of money and securities of the municipality is not a proper subject to be investigated under the provisions of the act, it would be difficult to point out any other subject which is of greater importance to the corporation.

" The better government of cities of the first class calls for an unceasing and vigilant care and supervision of the moneys and investments of the municipality, which it will be conceded is a duty especially obligatory upon the corporate officials, upon whom such duty is charged, as well as upon councils. Article 6 of the Bullitt bill declares that the duties of the city treasurer shall be the same as now provided by law, and the act of 1854 required him honestly to keep and account for all public moneys intrusted to his care.

" It is sufficient to say of the other points of objection to the proposed order under this head of the argument that action on the part of the subcommittee is not an assumed power, but, as we have stated, is especially given by the resolution of councils of May 21, 1891, and that councils are authorized by the Bullitt bill to give such power to a committee. There is, therefore, nothing doubtful in relation to the authority of the subcommittee to prosecute the inquiry which they have now in hand; nor do we regard the point well taken that Yard cannot be made subject to councils or their committee in requiring that he shall be sworn and required to testify in the present investigation, upon the principle that corporations can only exercise their powers over their members for limited and defined objects, as cited from Dillon on Corporations, vol. 1, page 174, of second edition.

" This principle as stated is undoubtedly true in its application to members of the corporation when the question is one of obedience to corporate law by those who have made themselves subject to such law—such as corporate taxation and conformity to proper municipal control, and to police regulation within

the limits of corporate authority. But it has no application when sought to be applied to the duty to which every citizen is subject when subpœnaed within the jurisdiction over which the subpœna runs, in a suit, investigation, or inquiry, properly instituted by a municipality as to matters in which the corporation is a party, and in which proceeding it has legislative authority to issue subpœnas to secure the attendance of witnesses. The power of the legislature, by themselves or by delegation of such authority to tribunals other than the judicial tribunals of the state, to punish for contempt, does not arise in the present stage of the proceeding before us.

" Neither councils or its committee have asserted such a right as belonging to them. The application is to the court in which the current business is running to make an order directing the witness to be sworn. The exercise of a power to punish for disobedience belongs to the judicial department of the government; unless there is authority given by the constitution to some other tribunal to punish for this cause, such punishment cannot be imposed. This power is given to the legislature of this commonwealth by article II, section 11, of the constitution, under circumstances therein specified. In the case of Kilbourn v. Thompson, 103 U. S. 168, it was held that congress did not possess a similar power, there being no warrant in the constitution of the United States for the infliction of such punishment. But that is a different question from the one before us, which is, can the legislature of the state determine under what circumstances the constitutional judicial tribunals of the commonwealth may impose such punishment? No sufficient reason has been given to satisfy us that this may not be lawfully done.

" It must suffice to say upon the point that conferring power, as provided for in the fifteenth section of the Bullitt bill, in cities of the first class alone, is local legislation within the inhibition of the constitution, that we are not prepared to give an affirmative answer to this proposition. The Supreme Court has affirmed the right of the legislature to classify the cities of the commonwealth, define and regulate their powers and duties.

" Much can be said in support of the contention that the portion of the Bullitt bill which gives to the courts of Philadel-

phia alone the power to punish for disobedience of an order made under the provisions of the bill conflicts with article V, section 26, of the constitution. This section requires that the jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process and judgment of such courts, shall be uniform. If this portion of the Bullitt bill is constitutional, it must be found to be so under the power of classification of cities, and we are not prepared to say that we are so clearly of the opinion that this portion of the bill is unconstitutional that we are justified in so holding. It is, however, a very close question; the doubt requires us to sustain the constitutionality of the bill. The objections to the constitutionality of the act, numbers 7, 8 and 9, we do not think are well taken.

" The remaining objection to the bill is, that article 15 is unconstitutional, because it violates the bill of rights of the constitution of the state, as set forth in sections 8, 9, 10 and 26. The ninth section alone has any approximate application to the question before the court. In this section it is provided among other matters, that in all criminal prosecutions the accused cannot be required to give evidence against himself. Indictments have been found against H. H. Yard, which, it is contended, have reference to the same subject-matter in relation to which the subcommittee are making inquiry and investigation, and that to require him to answer questions touching the same is to violate the spirit of this portion of the bill of rights. For, although the testimony which should be given would not be in the course of the criminal prosecutions now pending against him, yet it was claimed that as his trial was set down for hearing at a very early day, he ought not to be required to give testimony which, though it could not be given in evidence against him on the trial, might prejudice his interests by indirection; by the publicity which would be given to it through its general publication in the journals of the city, and the comments which might be made on the same. It is due to the representatives of the city to say that they disclaimed in the most positive manner a purpose on the part of the city to elicit from the witness any statement that would criminate, or tend to criminate him, or to prejudice his case before the jury, but that it was his duty to take the proper oath or affirmation before the

subcommittee, and testify to such matters of which he has knowledge, pertinent to the pending inquiry, which would not criminate or tend to criminate himself.

" This, however, Yard declined to do, claiming that, under the authority of Galbreath v. Eichelberger, 3 Yeates, 515, cited with approval in Horstman v. Kaufman, 97 Pa. 147, he could not be required to be sworn. Galbreath v. Eichelberger supports this contention under the facts of that case, which was founded on an alleged combination between a father and his son, who was called as a witness, to defraud the creditors of the father by a fraudulent conveyance of his land. The inquiry in that case was as to the participation of the witness in the alleged fraud, as to which, if the charge was true, he could not testify without implicating himself. The court said that if it should be conceded that an indictment would not lie against the witness, yet as the combination itself was nefarious and immoral, and would justly subject him to ignominy and contempt, he could not be required to be sworn. That it would in effect compel him to accuse himself of an immoral act, which would be a violation of his privileges as a citizen. It does not follow that the examination of H. H. Yard would be attended by similar results. The questions which may be addressed to him may not, in his own opinion and that of the counsel, even tend to criminate him or to expose him to ignominy and contempt. If the witness has knowledge of the accounts and deposits of John Bardsley, late city treasurer, which does not connect him with an improper and illegal use of public funds, there is no sufficient reason why he should not state his knowledge of such use under examination as a witness before the subcommittee.

" If questions should be propounded which would be liable to the objection recognized as a valid one in Galbreath v. Eichelberger, or which would conflict with the provisions of the ninth section of the bill of rights, he could decline to answer, and on an appeal to the court a decision could be had whether he was or was not required to make answer. The protection of the constitutional rights of the citizen is of the highest importance—much more important, as to ultimate results, than those connected with the present investigation, which rights no court would be slow to vindicate. We are of the opinion

that Yard should be sworn and testify as a witness before the subcommittee, having a protection against an invasion of his rights as a citizen in his own hands, and we so order."

The court made an order accordingly, and Yard appealed.

*Errors assigned* were (1) entertaining jurisdiction of the proceedings; (2) the order made, quoting it as given in the opinion of the Supreme Court.

*Mayer Sulzberger, A. S. L. Shields* with him, for appellant.

*Charles F. Warwick,* city solicitor, *Charles B. McMichael* with him, for appellee.

PER CURIAM, April 18, 1892.

This was an appeal by H. H. Yard, from an order of the court below, requiring him to appear before a subcommittee of the councils of the city of Philadelphia, to be sworn and testify in an investigation being conducted by said committee, in the matter of the deposits of the city moneys and the default of John Bardsley, the city treasurer.

The appellant appeared before said committee in obedience to said subpœna, but refused to be sworn and testify. His refusal was certified to the court of common pleas No. 1, which court, after hearing the case, and considering the answer of the said Yard, made the following order : " And now, July 3, 1891, after hearing the above application and the answer thereto, it is ordered by the court that the said H. H. Yard shall appear before the subcommittee referred to in the petition of John Eckstein, and shall be sworn, and shall testify in the inquiry or investigation now being held by said committee."

It appeared, from the answer of the said Yard, that he had been indicted in the court of quarter sessions of the county of Philadelphia, for a conspiracy with John Bardsley, the city treasurer, and it was claimed by Yard that this indictment involved the same transactions as those in regard to which the committee of said councils sought to interrogate him. It was also alleged that the said indictment was set down for trial only a few days after the date at which he was called to testify before the committee. Under these circumstances, it was contended by Yard that he could not be called as a witness.

We are of opinion that this question was raised prematurely, and that the case is not in a position for us to rule any ques-

tion touching his rights as a witness.   We have no knowledge, and at this stage of the case cannot have, as to the character of the questions to be asked him by the committee of councils.

The investigation which was in progress before the councils was a lawful investigation.   The subpœna was lawfully issued, and it was his duty to obey it.   Upon his refusal to do so, it was lawful for the court of common pleas to compel such obedience.   It cannot be tolerated for a moment that a man may be allowed to disobey a lawful subpœna upon his mere opinion that the subpœna had been improperly issued, or that the particular tribunal before which he was summoned to appear has no jurisdiction to proceed.   It was time enough for the appellant to have raised any objection after he had obeyed the subpœna, and been sworn as a witness.   If a question had then been asked which tended to criminate him, or which was in violation of any of his rights as a citizen, under the constitution and laws of this commonwealth, he could have declined to answer the same, and any question touching his rights as a witness could have been disposed of in a legal and orderly manner. As the case now stands there is nothing before us.

The judgment is affirmed, and the appeal dismissed, at the costs of the appellant.