MOORE DROP FORGING COMPANY *vs.* BOARD OF CONCILIATION
AND ARBITRATION.

Suffolk.    March 23, 1921. — September 16, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Constitutional Law,* Police power.    *Board of Conciliation and Arbitration.*
*Labor.    Strike.*

Where a strike involving more than twenty-five employees exists, the public con-
cern in the matter is sufficient to justify an impartial investigation by an
unbiased board of public officers within the bounds set forth in G. L. c. 150,
§§ 3, 5, 8.

The provisions of G. L. c. 150, §§ 3, 5, 8, are a constitutional exercise of the police
power by the Legislature.

It must be presumed, in the absence of evidence to the contrary, that, in holding a
public hearing and making a report under G. L. c. 150, §§ 3, 5, 8, relating to a
strike while there is pending a suit in equity by the employer against persons
responsible for the strike seeking relief by injunction, the board of conciliation
and arbitration will not violate constitutional guarantees of personal liberty
and individual freedom; and it cannot be said as a matter of law that in con-
ducting the hearing while the suit is pending the board would be interfering with
the exercise by the judicial department of the government of its functions of
deciding the suit according to the law and the evidence.

The statute, G. L. c. 150, §§ 3, 5, 8, is not open to the objection that it attempts to
legalize contempt of court.

BILL IN EQUITY, filed in the Supreme Judicial Court on February
25, 1921, and afterwards amended, seeking to enjoin the defendant
board from holding a hearing under G. L. c. 150, § 3, respecting a
labor dispute between the plaintiff and members of labor unions.

The suit was heard by *Carroll,* J., a commissioner having been
appointed under Equity Rule 35 to take the evidence. Material
findings of the single justice are described in the opinion. By an
order of the single justice a final decree dismissing the bill was
entered. The plaintiff appealed.

Material portions of G. L. c. 150, §§ 3, 5, 8, are as follows:

Section 3. ". . . When the board has knowledge that a strike
or lockout, which involves an employer and his present or former
employees, is seriously threatened or has actually occurred, and
such employer at that time is employing, or upon the occurrence
of the strike or lockout was employing, not less than twenty-five

persons in the same general line of business in any town in the Commonwealth, the board shall, as soon as may be, communicate with such employer and employees and endeavor by mediation to obtain an amicable settlement, or endeavor to persuade them to submit the controversy to a local board of conciliation and arbitration established under section nine or to the board. If a settlement is not agreed upon and the parties refuse to submit the matter in dispute to arbitration, the board shall investigate the cause of such controversy and ascertain which of the parties thereto is mainly responsible or blameworthy for the existence or continuance of the same, and shall, unless a settlement of the controversy is reached, make and publish a report finding such cause and assigning such responsibility or blame. The board may employ agents to assist in said investigation. . . . The board shall have the same powers for the foregoing purpose as are given to it by sections five to eight, inclusive. . . ."

Section 5. " If a controversy not involving questions which may be the subject of an action at law or suit in equity exists between a person employing not less than twenty-five persons in the same general line of business and his employees, the board shall, upon application as provided in the following section, as soon as practicable visit the place where the controversy exists and make careful inquiry into its cause, and may, with the consent of the Governor, conduct such inquiry outside the Commonwealth. The board shall hear all persons interested who come before it, advise the respective parties what ought to be done or submitted to by either or both to adjust said controversy, and make a written decision thereof which shall at once be made public, shall be open to public inspection and shall be recorded by the board. A short statement thereof may, in the discretion of the board, be published in the annual report, and the board shall cause a copy thereof to be filed with the clerk of the town in which said business is carried on. Said decision shall for six months be binding upon the parties who join in said application, or until the expiration of sixty days after either party has given notice in writing to the other party and to the board of his intention not to be bound thereby. Such notice may be given to said employees by posting it in three conspicuous places in the shop or factory where they work."

Section 8. " In all investigations, and inquiries or proceedings

conducted by the board, any member thereof may summon witnesses, may administer oaths, take testimony, and require the production of books and documents.  Each witness shall certify in writing the amount of his travel and attendance, and the amount due to him shall be paid forthwith by the board."

*H. A. Baker,* for the plaintiff.

*A. E. Seagrave,* Assistant Attorney General, for the defendants.

RUGG, C. J.  This is an appeal from a decree dismissing a suit in equity brought to restrain the defendants, constituting the Board of Conciliation and Arbitration, from holding a hearing under G. L. c. 150, § 3, respecting a labor dispute between the plaintiff and members of labor unions.  The material facts alleged in the bill and agreed to be true in substance are that in December, 1920, the plaintiff discharged from its employ fifty-eight men; that it then had four hundred and sixty-one men in its employment under written contract; that thereafter one hundred and twenty men left its service and combined to maintain and carry on a strike against the plaintiff; that on January 18, 1921, the defendants gave notice that they intended to hold a public hearing; that on January 19, 1921, the plaintiff filed a suit in equity in the Supreme Judicial Court joining as defendants therein officers and members of various labor unions carrying on the strike against the plaintiff, alleging that the strike was unlawful, and carried on by unlawful means, and that motion had been made for the appointment of a master to hear the evidence and make report of the facts; that the defendants refuse to postpone their proposed hearing until final decree is entered in the suit of the plaintiff against the labor unions but on the contrary intend to hold a public hearing, to summon the officers of the plaintiff as witnesses, to require the production of its books and documents to ascertain who is mainly responsible for the existence and continuance of the labor controversy, and to make and publish a report of its findings; and that this action will interfere with and prejudice its suit against the members of the labor union.

The single justice on the evidence found as facts that the plaintiff will not be prejudiced in the trial of its pending suit against the labor unions by the proposed action of the defendants and that the publication of the opinion of the defendants is not calculated to prevent a fair trial of that case and that the plaintiff will

not suffer irreparable injury if the defendants proceed with their proposed hearing.

There is nothing in the evidence to indicate that these findings of fact are plainly wrong. Therefore they stand as true under the familiar rule. *Lindsay* v. *Bird,* 193 Mass. 200.

The decision turns chiefly upon the constitutionality of the statute under which the defendants propose to proceed, which is printed above.

The public has a just interest in the causes of strikes and in placing the responsibility and blame for their instigation, prosecution and continuance. The disorder and violence which frequently accompany strikes are matters of common knowledge and often have been adverted to in decisions. *Plant* v. *Woods,* 176 Mass. 492. *Nute* v. *Boston & Maine Railroad,* 214 Mass. 184. *Folsom Engraving Co.* v. *McNeil,* 235 Mass. 269, 278. The economic waste and immediate financial loss both to employers and employees arising from strikes are too well known to require discussion. Where a strike exists involving more than twenty-five employees, the public concern in the matter is sufficient to justify an impartial investigation by an unbiased board of public officers within the bounds set forth in the statute. Legislation such as is here assailed is authorized by the general welfare clause of c. 1, § 1, art. 4 of our Constitution. It has direct connection with the public safety, health and welfare, the recognized foundations for the exercise of the police power. It is within the class of statutes upheld in the many cases reviewed in *Holcombe* v. *Creamer,* 231 Mass. 99, and is supported by the principle of that decision which need not be here further amplified.

It must be presumed that the defendants will proceed in accordance with law and will not violate constitutional guarantees of personal liberty and individual freedom. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50. It is declared in *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, 478, 479, "Neither branch of the legislative department, still less any merely administrative body, established by Congress, possesses, or can be invested with, a general power of making inquiry into the private affairs of the citizen. *Kilbourn* v. *Thompson,* 103 U. S. 168, 190. We said in *Boyd* v. *United States,* 116 U. S. 616, 630, — and it cannot be too often repeated, — that the principles that embody

the essence of constitutional liberty and security forbid all invasions on the part of the government and its employés of the sanctity of a man's home, and the privacies of his life. As said by Mr. Justice Field in *In re Pacific Railway Commission,* 32 Fed. Rep. 241, 250, ' of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption of his private affairs, books, and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all others would lose half their value.' " *Harriman* v. *Interstate Commerce Commission,* 211 U. S. 407. *Robinson* v. *Richardson,* 13 Gray, 454, 457, 458. *Osborne, petitioner,* 141 Mass. 307. There is nothing on this record to warrant the inference that the defendants will violate this well settled principle. If they should attempt to do so, doubtless the plaintiff would not be remediless.

The performance by the defendants of the duties required of them by the statute will constitute no interference with the exercise by the judicial department of the government of its functions of deciding the suit of the plaintiff against the officers and members of the labor unions according to the law and the evidence. That has been found as a fact. No principle of law requires a different conclusion. The court will proceed to the consideration of the issues raised in that suit wholly unaffected in any particular by what the defendants may do. There is nothing in *Bogni* v. *Perotti,* 224 Mass. 152, which supports the contention of the plaintiff.

The statute here attacked is not open to the objection that it attempts to legalize contempt of court. Here again it cannot be assumed that the defendants will undertake to deal with the issues involved in the pending suit or to violate the principles of law established by *Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S. 229, *United Shoe Machinery Co.* v. *Fitzgerald,* 237 Mass. 537, *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294, or by other decisions.

*Decree affirmed.*