ATTORNEY GENERAL *vs.* ALFRED H. BRISSENDEN.

Suffolk.   April 4, 9, 1930. — April 15, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*General Court. Constitutional Law*, Due process of law, Separation of powers of government, Witness at inquiry by Attorney General under legislative resolve. *Attorney General. Supreme Judicial Court. Police. Boston.*

The General Court has ample power of amendment and modification of the statutes touching the police department of Boston.

As an incident to its power to legislate, the General Court has the power to make investigations in order to ascertain facts as a basis of legislation, and for that purpose to summon witnesses and compel them to testify.

Although the purpose, of an investigation ordered by the General Court by Res. 1930, cc. 4, 13, into the circumstances surrounding a pension awarded to a member of the police department of the city of Boston and into "all . . . matters dealing with the service of . . . [such member] during his term of employment as a member of said police

department," did not appear in the resolves, the investigation, since it related to the police department of the city of Boston and to matters affecting the public treasury, must be presumed to have been ordered for a legitimate purpose in aid of legislation and for no other purpose: it could not be assumed to have been instituted in order to inquire into the private business of an individual.

Such investigation was not improper by reason of the circumstance that it bore some resemblance to an inquiry for the detection of crime, which would be beyond the powers of the General Court: that aspect of the investigation was an incident thereof and not an end.

The subject matter directed to be investigated by said resolves was within the constitutional competency of the General Court as ancillary to its legislative prerogative.

In conducting any investigation, whether by a committee of its members or through other agency, the General Court is bound to observe all provisions of the Constitution designed to protect the individual in the enjoyment of life, liberty and property and from inquisitions into private affairs.

The ascertainment by the General Court of facts in aid of legislation is not essentially a legislative function, nor is it a judicial function belonging exclusively to the courts; it is merely ancillary to legislation and may be accomplished by the General Court in any reasonable ·way.

Said resolves were not beyond the powers of the General Court in that they directed the Attorney General to make the investigation and to report his findings to the General Court.

The constitutional guaranties under art. 12 of the Declaration of Rights of the Constitution of the Commonwealth, securing to the individual protection against being deprived of his property, immunities or privileges, his life, liberty or estate except by the judgment of his peers or the law of the land, were not designed to protect him against specific inquiries directed to a legitimate end undertaken in furtherance of a definite legislative design.

Said resolves provided that the Attorney General might require the attendance and testimony of witnesses in such investigation; that no witness should be excused from giving testimony on the ground that it might tend to incriminate him, but that no witness should be prosecuted on account of any matter concerning which he was compelled to testify except for perjury committed in such testimony; and that, upon application by the Attorney General, a justice of the Supreme Judicial Court might compel witnesses to give testimony. During the course of the investigation a witness refused to answer certain questions, but not upon the ground that the answers might tend to incriminate him. Upon application by the Attorney General, a single justice of the Supreme Judicial Court found that such questions were material to the matters concerned in the investigation and ordered that the witness be required to answer the questions. *Held*, that

(1) The provision of the resolves giving the Supreme Judicial Court power to compel the attendance and testimony of witnesses was not invalid in that it would permit the Supreme Judicial Court to make

an adjudication merely ancillary and advisory to a legislative inquiry or in that it contravened the division of government provided by art. 30 of the Declaration of Rights;

(2) The question, whether that provision was within the constitutional power of the General Court, was justiciable in its nature;

(3) That provision did not violate the rights secured to the respondent by art. 12 of the Declaration of Rights;

(4) No right secured to the respondent by any other provision of the Constitution of the Commonwealth or of the Federal Constitution was violated by the resolves;

(5) The order by the single justice was proper.

APPLICATION, filed in the Supreme Judicial Court for the county of Suffolk on March 28, 1930, for an order requiring the respondent to answer certain questions asked of him at a hearing conducted by the Attorney General under Res. 1930, cc. 4, 13.

The pleadings and material facts found by *Sanderson, J.,* are described in the opinion. The single justice denied certain requests for rulings by the respondent, ordered the entry of an order requiring him to answer the questions, and reported the case for determination by the full court.

*R. Clapp,* Assistant Attorney General, (*D. C. Starr,* Assistant Attorney General, with him,) for the Attorney General.

*W. H. Shea,* (*H. Wise* with him,) for the respondent.

RUGG, C.J. This is an application for an order to require the defendant to answer questions propounded to him in the course of a hearing before the Attorney General conducted under chapters 4 and 13 of the Resolves of 1930. By said c. 4 the General Court directed the Attorney General "to make a thorough investigation of the circumstances surrounding the pension awarded to Oliver B. Garrett as a member of the police department of the city of Boston, and all other related matters dealing with the service of the said Oliver B. Garrett during his term of employment as a member of said police department. For the purposes of this resolve, the attorney general may hold public hearings, may require the attendance and testimony of witnesses under oath, and the production of books and papers pertinent to the matters under investigation." He was further directed

to report to the General Court his findings. By said c. 13
it was provided "That, for the purposes of the investiga-
tion directed to be made by the attorney general under"
said c. 4, "the scope of which is hereby extended to include
. . . all matters dealing with the service of Oliver B. Gar-
rett during his term of employment as a member of the
police department of the city of Boston, the attorney general
may require by summons the attendance and testimony of
witnesses and the production of books and papers before
him relating to any matter investigated by him in pursu-
ance of said chapter four or of this resolve . . . Such wit-
nesses shall, before testifying, be sworn by the attorney
general or by one of his assistants . . . No person shall be
excused from attending and testifying in the course of such
investigation, or from producing any books, papers or docu-
ments, on the ground that his testimony or evidence, docu-
mentary or otherwise, may tend to criminate him or sub-
ject him to a penalty or forfeiture; but he shall not be
prosecuted or subjected to a penalty or forfeiture; . . . for
or on account of any action, matter or thing concerning
which he may be required to testify or produce evidence,
documentary or otherwise, in the course of such investiga-
tion, except for perjury committed in such testimony."
Power was also conferred upon a justice of this court upon
application by the Attorney General to compel attendance
of witnesses and the giving of testimony as required by the
resolves in the same manner and to the same extent as be-
fore the court. The time for making report by the Attor-
ney General to the General Court was fixed as May 1, 1930.
Appropriation was made for conducting the hearings.

The defendant was summoned as witness to testify at
hearings held pursuant to these resolves. He refused to
answer certain questions but not on the ground that his
replies might tend to criminate him. Then this application
was presented. The defendant filed an answer setting up
amongst other matters that the resolves were contrary to
certain provisions of the Constitution of this Commonwealth
and in contravention of the due process of law guaranteed
to him by the Fourteenth Amendment to the Constitution

of the United States. At the hearing before the single justice it was found that the questions asked and to be asked of the defendant were calculated to bring out facts material to the investigation directed to be made by the resolves. The defendant presented requests for rulings, which were denied, and it was ordered that the defendant be required to answer the questions at the hearing before the Attorney General. The case was then reported upon the pleadings, findings, rulings and orders for the determination of this court.

The finding of fact made by the single justice is accepted as true. It is supported by the questions set forth in the application and in the statement of the Assistant Attorney General at the hearing. Thus it appears that the Attorney General expected to elicit from the defendant testimony that he was an employee of a dairy corporation managed entirely by the wife of the Garrett mentioned in the resolves, or was her employee, that the defendant under her directions and the advice of said Garrett delivered milk at places where various forms of vice were practised and received therefor exorbitant sums of money, which were in truth tribute levied upon vice under the disguise of payment for milk.

The police department of the city of Boston is under the general control and management of a police commissioner for the city of Boston appointed by the Governor. St. 1906, c. 291, as amended. See St. 1885, c. 323. The authority of the police commissioner is plenary to secure efficient police service, subject only to certain standing laws. The police commissioner has large powers relative to retiring from active service and placing upon the pension roll members of the police department of that city. St. 1920, c. 6; St. 1929, c. 3. To enact these statutes was within the power of the General Court under the Constitution. *Commonwealth* v. *Plaisted*, 148 Mass. 375, 383–387. The police commissioner thus is an officer of the State. *Sims* v. *Police Commissioner*, 193 Mass. 547, 549. *Sullivan* v. *Lawson*, 267 Mass. 438. By reason of these statutes the police department of Boston is peculiarly subject to the legislative department of government so far as concerns its establishment and regulation.

It follows that the General Court has ample power of amendment and modification of the statutes touching the police department of Boston.

It is a familiar principle of constitutional law that every presumption is made in favor of the validity of an act of the Legislature, and that the courts will not refuse to enforce it unless compelled so to do by provisions of the Constitution so plain in their bearing as to prevent any other rational construction. *Perkins* v. *Westwood,* 226 Mass. 268, 271. That principle must be borne in mind in the examination of these resolves. The grant of legislative power is conferred upon the General Court by the Constitution of this Commonwealth in ample terms. It includes the enactment and establishment of all manner of wholesome and reasonable laws for the good and welfare of the people and the authority "to set forth the several duties, powers, and limits, of the several civil and military officers" of the Commonwealth, c. 1, § 1, art 4. In the performance of its legislative functions manifestly the General Court may find it needful to acquire information not possessed by its individual members. Investigations of various subjects by legislative committees are often made to the end that facts relating to the enactment of proposed, or the amendment of existing, statutes may be ascertained and presented in available form for the enlightenment of members of the General Court as a basis for legislation. This method of procedure has been so common as not to require the citation of illustrations. It may be a necessary incident of such method of ascertaining facts to receive evidence and to examine witnesses. The only means of assuring the attendance and testimony of witnesses is to summon them and to compel them to attend and to testify. There is no express grant of this power to the General Court by any words of the Constitution. It is an attribute of the power to legislate and follows as an essential implication of that power. It was so held in *Burnham* v. *Morrissey,* 14 Gray, 226, 239, and has never since been doubted in this Commonwealth. It was so decided after earnest and prolonged consideration accompanied by exhaustive discussion and illuminating review of authorities in

*McGrain* v. *Daugherty*, 273 U. S. 135, 154, 160–176. *Sinclair* v. *United States*, 279 U. S. 263.

The record does not disclose the causes leading to the passage of said resolves further than to show that a petition had been filed during the current session of the General Court, accompanied by an order providing for an investigation by a joint legislative committee of substantially the same subject matter, that after hearing the petitioner was given leave to withdraw, and that subsequently the resolves were introduced and passed. The purpose of the present investigation is not set forth by any recitals by way of preamble or in the body of the resolves. This absence of declaration of the aim of the investigation, or of the ultimate use designed to be made of the information gathered, is the basis of a strong argument in behalf of the defendant to the effect that it does not appear that the inquiry is instituted for any legitimate purpose. It is urged that the investigation is directed to the private business of the defendant; that if permitted to go forward it "will sweep all our traditions into the fire" and will further a scheme "to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime." *Federal Trade Commission* v. *American Tobacco Co.* 264 U. S. 298, 306.

The proposition is put forward that the power to compel the giving of testimony is "limited to an investigation in aid of a legislative purpose which must in some way be indicated within the four corners of the enacted" resolves. It might save questions of difficulty if such declaration of the ultimate legislative design were made. The General Court has no power through itself or any committee or any agency to make inquiry into the private affairs of the citizen, except to accomplish some authorized end. *Kilbourn* v. *Thompson*, 103 U. S. 168, 190. In our opinion this argument of the defendant is completely answered by the reasoning of two decisions of the Supreme Court of the United States. *In re Chapman*, 166 U. S. 661, was a case where the Senate of the United States raised a special committee of its members to investigate certain charges made in newspapers that

members of the Senate were yielding to corrupt influences touching pending legislation. No ultimate purpose or action was specified. It was said at page 669: "What the Senate might or might not do upon the facts when ascertained, we cannot say, nor are we called upon to inquire whether such ventures might be defensible . . . . Nor will it do to hold that the Senate had no jurisdiction to pursue the particular inquiry because the preamble and resolutions did not specify that the proceedings were taken for the purpose of censure or expulsion, if certain facts were disclosed by the investigation." In *McGrain* v. *Daugherty*, 273 U. S. 135, at pages 177, 178, occurs this: "It is quite true that the resolution directing the investigation does not in terms avow that it is intended to be in aid of legislation. . . . The only legitimate object the Senate could have in ordering the investigation was to aid it in legislating; and we think the subject-matter was such that the presumption should be indulged that this was the real object. An express avowal of the object would have been better; but in view of the particular subject-matter was not indispensible." We adopt this reasoning and conclusion as stating the law of this Commonwealth without further discussion. The investigation in the case at bar relates to the awarding of a pension to a named member of the police department of Boston and all matters dealing with his service as a member of that department. These subjects relate to public interests hitherto dealt with by the General Court through special statutes and subject to legislative regulation, as already pointed out. Scarcely any matter is of more general public interest or concerns more intimately the safety and protection of the individual or the fair name of the community than an efficient, honest and adequate police force. The just administration of any pension system directly affects also the public treasury. If capable of being so construed, it must be presumed that the resolves were passed with a legitimate object in view.

The investigation as disclosed by the record appears to bear some resemblance to an investigation by a grand jury for the detection of crime. That must be treated, however,

as an incident and not an end. It hardly needs be said that the General Court has no functions of that nature except in connection with impeachment. The investigation must be treated as in aid of legislation and having no other purpose.

It follows, in our opinion, that the subject matter directed to be investigated by the resolves here assailed was within the constitutional competency of the General Court as ancillary to its legislative prerogative.

It may be added that in conducting any investigation, whether by a committee of its members or through other agency, the General Court is bound to observe all provisions of the Constitution designed to protect the individual in the enjoyment of life, liberty and property and from inquisitions into private affairs.

A question of difficulty is whether it is permissible for the General Court to deputize the Attorney General to conduct the investigation. The Legislature cannot delegate its law making power or any power explicitly reposed in it. *Boston* v. *Chelsea*, 212 Mass. 127. *Dinan* v. *Swig*, 223 Mass. 516. It is to be observed that no attempt has been made by the present resolves to devolve upon the investigator any legislative function. He is simply required to explore a comparatively narrow and strictly specified field. The resolves relate exclusively to facts. No recommendations are required. The ascertainment of facts in its essence is not a legislative function. It is simply ancillary to legislation. It may be accomplished in divers ways. While it may be done by the Legislature itself, it is a responsibility not infrequently placed upon committees and individuals. In some aspects it may partake of judicial attributes and require the exercise of quasi judicial faculties. It is not, however, a judicial function belonging exclusively to the courts. See *Boston, petitioner*, 221 Mass. 468, 474. There are numerous instances where the duty of making investigations of facts and reporting to the General Court has been placed upon boards or committees appointed for the purpose. Frequent illustrations of this practice also are found respecting permanent boards or commissions

largely administrative in nature. See St. 1894, c. 343; St. 1897, c. 509, § 3; St. 1912, c. 719, § 9; Res. 1894, c. 108; Res. 1896, c. 60; Res. 1911, c. 55; Res. 1912, c. 113. We are of opinion that there is no distinction in principle between investigations and reports thus required and the one authorized by the present resolves. The ascertainment of pertinent facts as the basis for legislation is within the power of the law making department of government. When a legislative body has a right to do an act, it must be allowed to select the means within reasonable bounds. It is not precluded from delegating incidental powers which it may exercise itself in aid of its primary functions but which do not partake of the nature of law making. Authority to obtain information necessary for its determination concerning the exercise of the power to enact laws may be conferred upon nonlegislative bodies, and we are of opinion that there is nothing in the resolves in this particular which transcends the competency of the General Court under the Constitution. Where facts are necessary as a basis for legislative action, the General Court may ascertain them in any reasonable way. Familiar methods are by appropriating the results of studies already made by itself or by others, by conducting an inquiry through a committee of its members, or by utilizing an existing commission or board to make and report the results of a research.

The question is raised whether the provision of said c. 13, to the effect that attendance of witnesses and the giving of testimony before the Attorney General may be compelled by the courts, is within the constitutional power of the Legislature. This aspect of the case relates to procedure and jurisdiction. We regard this point as settled on principle by the decision in *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447. The opinion in that case contains an elaborate discussion of every aspect of the proposition. The question there presented related to the powers of the interstate commerce commission to summon witnesses and to compel their testimony touching relevant matters. The statute there under review as to compelling attendance of witnesses and enforcing the giving of testimony resembled

the words of the resolve in the present case in every material matter. It was said at page 477 that the United States "insists that the evidence called for is material in the matter under investigation; that the subject of investigation is within legislative cognizance, and may be inquired of by any tribunal constituted by Congress for that purpose. The appellees deny that any such rights exist in the general government, or that they are under a legal duty, even if such evidence be important or vital in the enforcement of the Interstate Commerce Act, to do what is required of them by the Commission. Thus has arisen a dispute involving rights or claims asserted by the respective parties to it. And the power to determine it directly, and, as between the parties, finally, must reside somewhere." In holding that this was a judicial question which, by virtue of the specific power conferred to that end, could be determined by the courts, it was said at pages 478, 479: "We do not overlook these constitutional limitations which, for the protection of personal rights, must necessarily attend all investigations conducted under the authority of Congress. Neither branch of the legislative department, still less any merely administrative body, established by Congress, possesses, or can be invested with, a general power of making inquiry into the private affairs of the citizen. *Kilbourn* v. *Thompson*, 103 U. S. 168, 190. We said in *Boyd* v. *United States*, 116 U. S. 616, 630, — and it cannot be too often repeated, — that the principles that embody the essence of constitutional liberty and security forbid all invasions on the part of the government and its employés of the sanctity of a man's home, and the privacies of his life. As said by Mr. Justice Field in *In re Pacific Railway Commission*, 32 Fed. Rep. 241, 250, 'of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption of his private affairs, books, and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all others would lose half their value.'" And at page 487 is this further pertinent language:

"One of the functions of a court is to compel a party to perform a duty which the law requires at his hands . . . . It is none the less the judgment of a judicial tribunal dealing with questions judicial in their nature, and presented in the customary forms of judicial proceedings, because its effect may be to aid an administrative or executive body in the performance of duties legally imposed upon it by Congress in execution of a power granted by the Constitution."

An adjudication that the defendant is in law obliged to give the testimony which he has refused to give is not merely ancillary and advisory to a legislative inquiry. It would be a decision touching a controversy which has arisen between the parties hereto. It would result in a judgment which would settle finally that controversy and the rights and obligations of the parties touching it. *Interstate Commerce Commission* v. *Brimson, supra,* at page 487. *Dinan* v. *Swig,* 223 Mass. 516, 520. There are numerous instances, in the actions of the General Court, where power has been vested in courts to compel the attendance and the giving of testimony by witnesses before boards, commissions and other bodies exercising quasi judicial powers or powers of inquiry as to facts. A general provision of this nature is found in G. L. c. 233, §§ 10, 11. See also G. L. c. 150, § 8; St. 1896, c. 515, § 3; St. 1917, c. 318, § 2; Res. 1919, c. 69; St. 1921, c. 325, § 3; St. 1923, c. 197, adding § 8A to G. L. c. 175. The constitutionality of these statutes, in their application to a case like the present, has never been directly challenged so far as we are aware. There are strong intimations, however, in *Lawson* v. *Rowley,* 185 Mass. 171, and in *Moore Drop Forging Co.* v. *Board of Conciliation & Arbitration,* 239 Mass. 434, 437, 438, to the effect that in their bearing upon issues raised in those cases such statutes did not exceed constitutional limitations.

The court is ever solicitous to maintain the sharp division between the three departments of government as declared by art. 30 of the Declaration of Rights. *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95, 115, 116. But that bound has not been overstepped by the present resolves.

We are of opinion that the question, whether the defendant may be compelled to testify before the plaintiff as to the matters disclosed on this record, is judicial in its nature. The provision of the resolves authorizing this court to compel the defendant to give testimony is a valid exercise of legislative power and confers jurisdiction to act.

A further contention of the defendant is that the resolves violate rights secured to him under art. 12 of the Declaration of Rights of the Constitution of this Commonwealth. Thereby there is assured to the individual protection against being deprived of his property, immunities or privileges, his life, liberty or estate except by the judgment of his peers or the law of the land. This is one of the great landmarks of human freedom. It cannot be cut down or invaded by any act of legislation. It is an additional shield to protect rights declared in art. 10. The right asserted by the defendant under the Fourteenth Amendment to the Constitution of the United States is substantially the same as that secured under these articles of the Declaration of Rights and is conferred by nearly the same words. *Commonwealth* v. *Strauss*, 191 Mass. 545, 550. The rights thus established in the fundamental law of both State and Nation must be sedulously preserved against direct attack or specious impairment. As was said in *Kilbourn* v. *Thompson*, 103 U. S. 168 at page 190: "No person can be punished for contumacy as a witness before either House [of the Congress], unless his testimony is required in a matter into which that House has jurisdiction to inquire, and we feel equally sure that neither of these bodies possesses the general power of making inquiry into the private affairs of the citizen." These constitutional guaranties were not designed to protect the individual against specific inquiries directed to a legitimate end undertaken in furtherance of a definite legislative design. The particular line of investigation revealed on this record does not in our opinion offend against these constitutional guaranties. It requires the defendant to disclose facts within his personal knowledge intimately connected with the official conduct of a member of a police organization established by the Legislature. It is not contended that the answers would

tend to criminate the defendant. We think that this aspect of the case is within the sweep of the principles declared in *McGrain* v. *Daugherty*, 273 U. S. 135. It seems to us plainly distinguishable from *Harriman* v. *Interstate Commerce Commission*, 211 U. S. 407, where the inquiry was voluntarily undertaken by a public board outside of any existing law to aid it in recommending the passage of legislation, without direction from the legislative department, under a statute interpreted to confine the power to compel testimony of witnesses to complaints for contravention of the interstate commerce act or investigations upon matters that might have been made the subject of complaint. The testimony sought was in aid of an activity outside the scope of the powers conferred upon the commission. In the case at bar, as was said at pages 419, 420, "the power to require testimony is limited, as it usually is in English-speaking countries at least, to the only cases where the sacrifice of privacy is necessary — those where the investigations concern a specific breach of the law." No discussion is required to demonstrate that the questions here involved in the light of the setting of the investigation appear to have some tendency to concern specific breaches of the law.

This investigation also follows directly the line of a legislative mandate, presumed to be an aid in determining whether legislation is needed. The personal inconveniences occasioned to the defendant by being required to attend the hearing and to disclose the facts within his knowledge do not differ in kind or degree from those likely to be sustained by any witness compelled against his wish to give testimony. The investigation here authorized and undertaken does not pass beyond the legislative power as defined in *Burnham* v. *Morrissey*, 14 Gray, 226, and *McGrain* v. *Daugherty*, 273 U. S. 135. *Sinclair* v. *United States*, 279 U. S. 263, 291–295.

The conclusion is that in our opinion no constitutional right secured to the defendant under either the State or the Federal Constitution is involved by anything shown on this record.

All the points argued by the defendant have been con-

sidered. It is not necessary to examine one by one his requests for rulings. They were all denied rightly. No error is disclosed on the record. The order that the defendant be required to answer each of the questions set forth in the application was right and is affirmed.

*So ordered.*